BETTY GOLDSMITH, Adm'r of the Estate of Kay Keesee, *et al.*, Plaintiffs-Appellants, *v.* NEWTON TOWNSHIP, Livingston County, *et al.*, Defendants-Appellees.

Fourth District   No. 13534

Opinion filed January 6, 1977.

John L. Barton, of Barton & Barton, of Marseilles, for appellants.

Thompson & Strong, of Pontiac (Kenneth L. Strong, of counsel), for appellees Livingston County and Jon Bourne.

Zwanzig, Lanuti & Martin, of Ottawa, for appellees Newton Township and Norris D. Snow.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Betty Goldsmith, administrator on behalf of the estate of Kay Keesee, brought suit in the Circuit Court of Livingston County against defendants Newton Township and Norris Snow as its highway commissioner and Livingston County and Jon Bourne as its Superintendent of Highways for the wrongful death of Kay Keesee. A jury trial resulted in a verdict against the plaintiff and in favor of all defendants. Plaintiff appealed after the court denied her post-trial motion.

■■  Plaintiff's decedent died at about 9 p.m. on November 23, 1973, when a car she was driving across the Manville Bridge over the Vermilion

River in northern Livingston County went through a guardrail and fell into the river. She was by herself at the time and there were no eyewitnesses. The complaint charged negligence on the part of each of the defendants in the construction and maintenance of the bridge surface and its guardrails. The jury answered a special interrogatory finding plaintiff's decedent to be guilty of contributory negligence which was a proximate cause of her death. Plaintiff cannot recover from any of the defendants for their negligence if her decedent was guilty of contributory negligence. Since the answer to the interrogatory would control over any general verdict against any defendant (Ill. Rev. Stat. 1975, ch. 110, par. 65), reversible error would have occurred only if the error related to the issue determined by the answer to the interrogatory.

■■ Plaintiff maintains that the court erred in giving defendant's instruction D which was in the form of IPI Civil No. 60.01 because there was no evidentiary basis for the instruction. It told the jury of a State statute which prohibited the driving of a vehicle on a highway at a speed greater than was reasonable and proper considering the conditions. The instruction stated that the fact that the speed of the vehicle did not exceed the maximum speed limit did not relieve the driver from the duty to decrease speed when special hazards existed with respect to weather or highway conditions. The instruction concluded by advising the jury that it could consider whether a party violated the statute on the occasion in question in determining whether a party was contributorily negligent at that time.

In a civil negligence case the evidentiary basis for the giving of the instruction on the statutory prohibition against speeding may be entirely circumstantial. (*Nordman v. Carlson* (1937), 291 Ill. App. 438, 10 N.E.2d 53.) Here that circumstantial evidence consisted largely of the tire marks left by decedent's vehicle on the bridge. The bridge was approximately 16 feet wide and 190 feet long. It had an open plank deck with the planks extending across the width of the bridge. Built on top of the deck were two runways, each 36 inches in width, extending across the length of the bridge about 20 inches apart and equidistant from the center of the bridge. The runways were for the wheels of vehicles crossing the bridge to travel on. Each runway consisted of three planks laid side by side running the length of the bridge. Each plank was 12 inches wide and extended a little less than 2 inches above the deck.

The tire tracks on the bridge indicated that plaintiff had entered the bridge from the south and crossed to the north. Either at the time she entered the bridge or 12 to 15 feet thereafter the wheels of her car went to the right of the runways and onto the deck. She proceeded northward on the bridge with her wheels astraddle the right runway until she reached a point somewhere well past the middle of the bridge. The tire marks then

swerved at about a 45-degree angle to the left and showed that the car continued at that angle until it went into a guardrail on the left side of the bridge, through the guardrail and off the bridge.

The evidence indicated that at the time of the occurrence, the bridge and the approaches were very slippery due to a frost. The tire tracks showing the path of decedent's car were imprinted in the frost. One of the plaintiff's witnesses testified that he had crossed the bridge from the same direction as decedent shortly before she crossed and that the slippery condition of the road as it approached the bridge was readily apparent. The jury could have determined that the decedent likewise knew or should have known of the hazardously slippery condition of the road and bridge surface as she entered the bridge. The jury could also have determined that an ordinarily prudent person would have slowed to an almost creeping pace when crossing the bridge and that such a speed would be the most that was reasonable and proper considering the existing hazards.

State Trooper Ervin W. Manning investigated the occurrence and testified on behalf of the plaintiff describing the bridge and tire tracks. On cross examination, without objection, he stated, "It is difficult to say how fast she was going mile-wise and she was going fast enough the car went out of control and it went through the bridge." He was then asked if speed would be a factor in her loss of control. He answered, "Speed would be a factor but I don't know what mile per hour she would be going."

The pattern of the tire marks indicated that when decedent made her left turn to get onto the runways, she was going at such a speed that she could not straighten her car back. The evidence was uncertain as to whether she skidded. If she had been going at a slow speed and skidded, the elevation of the left runways would have tended to stop the right wheels of the car before the car got to the left edge of the bridge. As the trooper observed, decedent's speed was a factor in the occurrence. The evidence would indicate that a slower speed would have prevented the occurrence. Whether a reasonably prudent person would have been driving at that speed considering the hazard involved was a question for the jury. The circumstantial evidence of the tire tracks presented an evidentiary basis for the instruction.

Defendants seek to support the giving of the instruction upon evidence that decedent's car was found on the river bottom some 35 to 40 feet downstream and west of the bridge. The water was about 6 feet deep and the car was resting on its top with air bubbles coming out. Because of the likelihood that the current might have carried the car some distance before it finally came to rest on the river bottom, no inference as to speed can arise from this evidence.

■■ Only one other claim of error has any bearing on the question of

the exercise of care by plaintiff's decedent. An engineering expert testified on behalf of plaintiff during her case in chief. Later the court denied plaintiff leave to recall that witness who would purportedly have testified that the guardrail at the place where the car went through would have been pulled apart when hit by a car like decedent's even if the car was travelling at only 6 miles per hour. This evidence bore mostly on the question of the installation and maintenance of the guardrail. Had argument been made that the pulling apart of the guardrail by the car indicated that the car's speed was excessive, the proffered testimony would have had probative value in negating it. No such argument was made, however. Furthermore, permission to recall a witness who has already testified rests largely in the sound discretion of the court and will not be upset unless an abuse of that discretion is shown. (*Anderson Transfer Co. v. Fuller* (1898), 174 Ill. 221, 51 N.E. 251.) The refusal to grant that permission here was not reversible error.

The judgment appealed is affirmed.

Affirmed.

REARDON and MILLS, JJ., concur.