Hester Vischer, Appellant, *vs.* The Northwestern
Elevated Railroad Company, Appellee.

*Opinion filed December 17, 1912.*

1. Appeals and errors—*when a motion to dismiss appeal must be denied.* A motion to dismiss an appeal upon the ground that the errors assigned cannot be sustained and that the record is free from error must be denied, as that is the question to be determined upon the final submission of every case.

2. Same—*when errors not affecting a special finding are not ground for reversal.* Where the jury in a personal injury suit against an elevated railroad company return a special finding that no servant of the defendant was guilty of any negligence contributing to the injury and return a general verdict of not guilty, alleged errors not affecting or tending to produce the special finding are not ground for reversal.

3. Same—*whether verdict and special finding are against the weight of evidence is not a question for Supreme Court.* Where the jury in an action for personal injury return a general verdict of not guilty and a special finding that no servant of the defendant railroad was guilty of any negligence, the question whether the verdict and special finding are against the weight of the evidence is not open to consideration on appeal to the Supreme Court from a judgment of affirmance by the Appellate Court.

4. Instructions—*when party is estopped to complain of theory of instructions.* The plaintiff in a personal injury case, who recognizes as correct the theory presented by defendant's instructions by requesting and obtaining instructions adopting the same theory, cannot complain, on appeal, that such instructions are incorrect.

5. Evidence—*when claim that a signed statement should have been introduced is groundless.* Where the plaintiff in a personal injury case, who is asked, upon cross-examination, if she did not sign a certain paper shown to her and purporting to be signed by her, says she does not remember and refuses to affirm or deny that she signed it, and the defendant's attorney, calling her attention to time and place, asks if she did not then make to a certain person a statement which he proceeds to read, it cannot be claimed, on appeal, that it was error to permit the statement to be read for the reason that the statement was itself the best evidence of what she said.

6. Same—*when question is, in fact, hypothetical.* A question asked of expert medical witnesses as to whether it would be possible for a person to have a fall and facial paralysis result from

the fall twenty-six days afterward, is based upon the hypothesis that a person had a fall and calls for an opinion as to facial paralysis resulting therefrom, and is, in fact, hypothetical.

7. NEGLIGENCE—*rule as to burden of proof and presumption of negligence.* In an action by a passenger against the carrier, based upon negligence of the carrier, the burden of proof, as a matter of law, is upon the plaintiff to allege and prove due care upon her part and negligence by the defendant which caused the injury, but, as a matter of proof, when the injury is shown and it is proved to have arisen from something within the control of the carrier or from some danger which it was its duty to anticipate and guard against, a presumption of negligence on the part of the carrier or its servants arises.

8. SAME—*what makes a prima facie case against carrier—burden of proof.* In an action by a passenger for an injury alleged to be due to the negligence of the carrier, if the plaintiff proves the exercise of due care by her and the fact of the injury and connects the cause of the injury with the carrier, a *prima facie* case is made which justifies a verdict if no evidence is introduced to meet it; but if evidence is produced to meet it, then, on the whole case, the burden is on the plaintiff to establish the averments of the declaration by a preponderance of the evidence.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

DAVID F. MATCHETT, and AMOS W. MARSTON, (JAMES P. HARROLD, of counsel,) for appellant.

SHERIFF, DENT, DOBYNS & FREEMAN, (ADDISON L. GARDNER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was brought in the superior court of Cook county by appellant, Hester Vischer, against the appellee, the Northwestern Elevated Railroad Company, to recover damages for injuries sustained while a passenger on a train of the appellee, caused by starting the train while appellant

was alighting therefrom. The case was tried three times. The first trial resulted in a verdict of not guilty, with a special finding upon this interrogatory, "Was any servant of the defendant guilty of negligence which contributed to causing the accident?" the answer of the jury being, "No." A new trial was granted because of erroneous instructions. The second trial ended in a disagreement of the jury. On the third trial a verdict of not guilty was returned, together with the following interrogatory and answer: Interrogatory, "Was any servant of defendant guilty of negligence in any act or omission contributing to the cause of the accident?" Answer, "No." Judgment was entered on the verdict, and Branch "B" of the Appellate Court for the First District affirmed the judgment and granted a certificate of importance and an appeal.

Appellee made a motion to dismiss the appeal, which at the request of counsel was postponed to the hearing and taken for decision on the final submission of the case. The ground of the motion is, that the errors assigned cannot be sustained and the record is free from error. That is the question to be determined upon the final submission of every case, and it affords no reason for dismissing an appeal. The motion is denied.

The facts proved without dispute at the trial are as follows: On December 31, 1905, the plaintiff, accompanied by her sister and others, was dining with relatives in Buena Park, on the north side in the city of Chicago. About nine o'clock in the evening they started to go to the home of the plaintiff's nephew, where she was visiting. They rode to Randolph street station in the second car of a train composed of three cars. The train stopped at the station platform and the guard between the second and third cars opened the gates for the purpose of allowing passengers to alight. All of the party passed out upon the platform while the train was standing still except the plaintiff and her sister. The sister was slightly crippled,

and the plaintiff was walking with her and slightly in the rear, assisting her. The train started before these two had alighted, throwing the sister upon the platform and also the plaintiff a few feet further along. The train immediately stopped in response to a stop signal given by the guard. The train crew consisted of three men, who were the only employees of defendant on the train. They were a motorman, who occupied a booth on the left side of the front end of the first car; a conductor, who was stationed between the first car and second car; and a guard, stationed between the second and third cars. The cars were started and stopped by signals, and the starting signal was two bells, which was always first given by the guard between the second and third cars by pulling a rope which passed forward through the upper part of the second car to the platform where the conductor was, where it was attached to a bell, which rang when the rope was pulled. The conductor in turn, when his gates and platforms were clear and ready for starting, would pass the signal, by similar means of a bell and rope, to the motorman. At this time the train stood at the station until the conductor had opened his gates and let passengers off and new passengers on and again closed the gates and was ready to go ahead. He then received the regular signal of two bells rung from the rear and passed it to the motorman, who started the train. Within a few seconds the conductor received the stop signal of one bell from the guard and immediately passed it to the motorman, who stopped the train. The guard between the second and third cars, where the plaintiff and her companions were getting off, gave the stop signal but he did not give the go-ahead signal. The conductor and motorman were in no manner at fault, and the starting signal was not given by any servant of the defendant but was given in some unexplained manner by some other person. The employees of the defendant were free from any negligence, and it is not contended that a carrier of pas-

sengers is liable for injuries sustained by a passenger as a result of a signal to start a train not given by any employee and without the knowledge or authority of any employee of the carrier.

It is contended that the court erred in allowing the attorney for defendant to read to the plaintiff a part of a written statement claimed to have been made by her about the time of the injury, without offering the whole statement in evidence or identifying it. On the cross-examination of the plaintiff a paper purporting to be signed by her was shown to her and she was asked if the signature was hers. She said she did not know, and would neither affirm nor deny that she signed the paper. Her attention was then called to a particular time and place, and she was asked if at that time and place she made to W. L. Pennington a statement which the attorney read from the paper. It was objected that the statement itself was the best evidence of what she said, and the attorney for the defendant offered to put the paper in evidence if the signature was admitted. The attorney for the defendant was desirous of offering the paper but the witness said she did not remember signing it, and the signature not being admitted, there is no ground for the claim that it ought to have been offered as the best evidence.

It is next argued that the court erred in allowing defendant to examine experts improperly. There was evidence that facial paralysis developed some time after the accident, and expert medical witnesses were asked if it would be possible for a person to have a fall and facial paralysis result from the fall twenty-six days afterward. The jury returned a special finding that no servant of the defendant was guilty of negligence in any act or omission contributing to the cause of the accident, which was controlling, regardless of the nature of the general verdict, and necessitated a judgment for the defendant. Any error not affecting or tending to produce that special finding

would not be cause for the reversal of the judgment, since that ultimate fact was conclusive against the right to recover. The testimony of the experts related only to the amount of damages, which was not considered by the jury, and if there had been an error the judgment could not be reversed on account of it. The objection, however, was not good. Counsel say they did not object that the questions asked were not properly the subject of expert opinion but objected that they were not in hypothetical form. They were, in fact, based upon the hypothesis that a person had a fall, and called for an opinion as to facial paralysis resulting therefrom.

It is also insisted that the verdict and the special finding are unmistakably against the weight of the evidence, but that is a question which we are not authorized to consider.

Error is assigned on the giving of instructions requested by the defendant, and nearly all of those that were given are complained of. As we have said with respect to the expert evidence, the instructions could only be regarded as erroneous if they laid down incorrect principles of law for the guidance of the jury in determining whether the employees of the defendant were negligent. Those which related to that question are claimed to be erroneous on the ground that they ignored the *prima facie* case arising from the proof made by the plaintiff of her injury and the cause of it. In substance they advised the jury that the plaintiff must prove, by a preponderance of the evidence, the exercise of proper care and prudence on her own part and negligence on the part of the defendant in putting the train in motion when she was leaving it. This rule was recognized by the plaintiff as being correct in requesting instructions which the court gave, directing the jury in one of them that if the plaintiff had made out her case by a preponderance of the evidence they should find the defendant guilty, and in another, that while, as a matter of law, the burden of proof was upon her and it

256 — 37

was for her to prove her case by a preponderance of the evidence, if the jury believed that the evidence preponderated in her favor, although but slightly, it would be sufficient for them to find the issues in her favor. Having asked the court to adopt that theory she cannot complain of it as a rule for both parties. As a matter of law, the burden of proof in an action by a passenger against a carrier, based upon negligence of the carrier, is on the plaintiff to allege and prove the facts stated in these instructions. As a matter of proof, when an injury is shown and that it arose from something within the control of the carrier or from some danger which it was his duty to anticipate and provide against, a presumption of negligence on the part of the carrier or his servants arises. (*North Chicago Street Railway Co. v. Cotton,* 140 Ill. 486; *New York, Chicago and St. Louis Railroad Co. v. Blumenthal,* 160 id. 40; *Chicago City Railway Co. v. Carroll,* 206 id. 318.) The presumption does not arise from the injury itself, but from the injury and the cause or source of it, but when the injury is proved and the cause is connected with the carrier a *prima facie* case is made out for the plaintiff. (3 Thompson on Negligence, sec. 2756.) The carrier is then called upon to meet and overcome the *prima facie* case, and this is often spoken of as the burden of proof, which, in the sense of the necessity of producing evidence to meet a *prima facie* case, passes from party to party as the case progresses, but the burden of establishing the truth of the issue by a preponderance rests and remains with the party having the affirmative. (*Egbers v. Egbers,* 177 Ill. 82.) If there is no evidence to meet a *prima facie* case it becomes conclusive and justifies a verdict, but if evidence is produced, then, on the whole case, the burden of proof is on the plaintiff to establish the averments of the declaration by a preponderance of the evidence. The instructions commented upon are the only ones which could in any aspect of the case have had any effect in influencing

the decision of the jury, as expressed in the special finding that there was no negligence on the part of the defendant or its employees.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*